IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                     )<br>)<br>JIMMY LEE JONES                     )<br>_____) | CRIMINAL ACTION<br>NO. 1:07-CR-285-WSD |

SENTENCING MEMORANDUM ON BEHALF OF JIMMY LEE JONES

COMES NOW the defendant, JIMMY LEE JONES, and submits through stand-by counsel, the following arguments and citation of authority for consideration in his sentencing scheduled for January 24, 2008. The final PSR was not disclosed to Mr. Jones until today, and given its length, he has not yet had an opportunity to thoroughly review it.

APPLICABLE SENTENCING GUIDELINE

Both the probation officer and the government are incorrectly applying the sentencing guidelines to Mr. Jones' conduct on Count 1. PSR ¶¶ 117-187. Both the government and the probation office assert in a conclusory fashion that once you use U.S.S.G. § 2A3.1 to find the base offense level of 30, that you would then apply a four level increase pursuant to U.S.S.G. § 2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C. § 2241(a) or (b), The specific offense characteristic does not apply to any of the victims alleged in Count 1. The defendant has objected to these enhancements. The probation office contends that the four level enhancement under § 2A3.1(b)(1) does apply to victims C.U., D.T.,

and R.C. because Mr. Jones admitted conduct against these women that would be encompassed by 18 U.S.C. § 2241, aggravated sexual abuse. Aggravated sexual abuse is either (A) using force against the victims; or (B) threatening or placing the victim in fear that any person will be subject to death, serious bodily injury or kidnapping.

As to C.U., the government says that she reported that the defendant threaten to beat her if she did not have sex with two men in the hallway of a night club. This threat is not "using force". Nor does this threat reasonably place C.U. in fear that she would be "subject to death, serious bodily injury, or kidnapping." The government contends when C.U. did not comply with Jones "he began pushing her around and slapping her repeatedly in the face." However, when C.U. reported this to the police, she claimed that it was the men she had sex with that pushed and slapped her. Attachment A. C.U.'s contentions that Jones forced her to engage in sex with him have nothing to do with the allegations of prostitution.

Similarly, the government asserts that D.T. was forced to have oral sex with the defendant and was slapped for not holding his penis correctly. She also was threatened with physical beatings by the defendant and witnessed the beating of another victim so she was in fear of serious bodily injury from the defendant and "as a result, she engaged in acts of prostitution as instructed by the

defendant." However, the government fails to allege any connection between these allegations, and her alleged prostitution. This does not establish that Mr. Jones used threats or force against her specifically in relation to her sexual activities with other men.

Similarly, the government asserts that R.C. reported that the Mr. Jones physically hit her eight or nine times and on two occasions beat her up. Then there is a conclusory assertion that "these incidents of force compelled R.C. to engage in sexual acts as directed by the defendant." How did this compel her? There are no facts asserted that make the connection between her personal relationship with Mr. Jones and as being used to threaten or force R.C. into sexual acts with others. The other assertion regarding R.C., that Mr. Jones would call her parents and expose her activities, does not satisfy the definition for aggravated sexual abuse under 18 § U.S.C. 2241. The government asserts that threatening to call R.C.'s parents put her in fear of violence towards her parents, however there is nothing in the discovery provided to the defendant that suggests that any victim ever claimed Mr. Jones had threatened violence towards their family members. Her claimed fear of embarrassment, is not use of force.

The government also contends that in his Plea Agreement, Mr. Jones admitted aggravated sexual abuse of C.U., R.C., and D.T. in Plea Agreement ¶ 4, p.3 and ¶ 4, p.4. Mr. Jones contends he did not appreciate at the time of his plea, many of the factual details contained in his plea. He now disputes the accuracy of some of the

details and the government should put up evidence to support these assertions.

## MULTIPLE COUNT ADJUSTMENT

The government and the probation office incorrectly apply the multiple count adjustment under U.S.S.G. § 3D1.4 to the guideline calculation under Count 1. PSR ¶¶ 249-265. Both rely upon U.S.S.G. §§ 2G1.1 and 2G1.3 that refer to the multiple count adjustment for multiple victims. However, this ignores the cross reference to U.S.S.G. § 2A3.1. Because the cross reference under section in 2G1.1 takes one out of that guideline into the aggravated sexual abuse guideline, the multiple count adjustment does not apply. This is not a cross reference that simply instructs use of a higher offense level of one or the other guideline in calculating a portion of the offense level, the cross reference removes you entirely from 2G1.1 into 2A3.1, which does not direct one to the multiple count rules.

## OBSTRUCTION OF JUSTICE

The PSR ¶ 125, 135, 145, 155, 164, 173, 183, and 193 incorrectly asserts that Mr. Jones should suffer a two level enhancement in his offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1. The government first asserts that obstruction lies based on Jones' statements to the FBI on December 30, 2005, that he was not a pimp and did not physically abuse any of the women under contract to him. Denial of accusations of misconduct prior to arrest do not constitute obstruction of

justice. Denial of guilt is not obstruction. U.S.S.G. § 3C1.1 App.N.2; and United States v. Salemi, 26 F.3d 1084 (11th Cir. 1994). Then the government contends that Mr. Jones has obstructed justice in his objections to the Presentence Report. Mr. Jones submits that his objections to the Presentence Report are meritorious, and after the Court has heard the basis for his objections at the conclusion sentencing hearing, he submits that the Court will find that he should prevail on these objections.

## WHO IS A VICTIM?

Mr. Jones has objected to certain individuals named included as victims in the Presentence Report. PSR ¶¶ 16,17,73-75. The probation office and the government blur the distinction between who is a victim for relevant conduct under the sentencing guidelines, and who is a victim for the purposes of imposing restitution. Mr. Jones submits there is a distinction. Whether a person is a victim under U.S.S.G. § 1B1.3, of the Sentencing Guidelines in calculating relevant conduct for determining the offense level, has no application in this case given the nature of the offense. The government admits as much in the letter to the probation office. The objections by Mr. Jones to who was being identified as a victim went more specifically to the paragraphs of the Presentence Report dealing with restitution and victim impact. PSR ¶ 17 and 115.

The government also contends that whether some of the women alleged as victims in the Presentence Report are not actually victims, it would not impact the guideline calculation, and thereby suggesting that his objection is moot. However, Rule 32(d)(2)(B) requires the presentence report contain "verified information stated in a non-argumentative style, that assesses the financial, social, psychological, and medical impact on any individual against whom the offense has been committed;". Also, identifying an individual as a victim is highly relevant to restitution. However, it is also highly relevant to the sentence that this Court ultimately imposes upon Mr. Jones. How many of these women were actually victims, and to what extent these woman were victimized should be highly relevant to the sentence this Court ultimately finds to be reasonable. If the actual number of victims is lower than that determined by the probation officer, and or the nature of the conduct of the defendant towards some or all of these women is less serious than originally described in the Presentence Report, that would be a basis for finding the guideline sentence was greater than what a reasonable sentence would be for the actual offense conduct.

## M.S. IS NOT A VICTIM.

It is disingenuous for the government to characterize M.S. as both a victim and a co-conspirator. Count 1 of the Indictment charges Mr. Jones with a conspiracy, which based on the factual

basis clearly relies upon Michelle Styles as a co-conspirator. The government has repeatedly asserted throughout the prosecution of this case that Michelle Styles is not a victim. United States v. Jones, No.1:05-CR-617, Dkt.#77-44, 61; Dkt.#79-494,496. (Attachment B). The Government also admitted that Jemice Dandridge is not a victim. Id. Dkt.#77-61. (Attachment C.) Yet, in their letter to the probation officer 1/7/08, the government attempts to have it both ways claiming that Ms. Styles is a victim first who then becomes a co-conspirator. Ms. Styles' own statements repeatedly belie any inference that she was a victim of Mr. Jones. Yes, she did enter into a contract with Mr. Jones as did other women in this case. Ms. Styles makes it clear that she was an exotic dancer before she met Mr. Jones and after entering into a contract with him and thereby obtaining his advice and counsel on how to improve herself as an exotic dancer, her income increased dramatically. Even after she had completed her payments under the contract, Ms. Styles continued her association with Mr. Jones up until the time of his arrest. She bragged about her economic success under Mr. Jones' tutelage, and her continued success independent of him after their contractual relationship ended.

The government asserts that p. 3 of the letter to the probation officer 1/7/08 that Michelle Styles "was also transported with victims named in the information outside of the State of Georgia to engage in prostitution." Mr. Jones submits he never transported Michelle Styles outside the State of Georgia for any

7

purpose.    Michelle Styles transported victims named in the information, Mr. Jones did not.

## RELEVANCE OF MUSIC VIDEOS AND INTERVIEWS

The government repeatedly asserts in its letter to the probation officer 1/7/08, that whether the women appeared in music videos, television shows, modeling spreads in magazines, or were not sexually innocent, has no bearing on the issues before this Court at sentencing.  On the contrary, Mr. Jones submits that the hip-hop culture the women sought to embrace, the culture of the clubs in which some of them met Mr. Jones initially, and their level of comfort with casual anonymous sex, is highly relevant to this Court's resolution of the impact on the victims.

Moreover, the Court must consider such factors in determining an appropriate sentence.  18 U.S.C. § 3553 provides:

(a) <u>Factors to be considered in imposing sentence</u>.

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.  The Court, in determining the particular sentence to be imposed shall consider-

    (1) the nature and circumstances of the offense...

    (2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offer, to promote respect for the law, and to provide just punishment for the offense;"

These women were seeking out opportunities to promote themselves in the highly sexually charged world of rap music. Their claims of trauma and distress must be viewed in the context of the culture they were well aware of and hoped to become a part of.  If, for instance, R.C. a highly educated co-ed, from am affluent family aspires to excel in the world of hip-hop videos, she must know that this ambition will put her in the company of artists whose successes are premised upon the abuse, use and dehumanization of women.  The nature and circumstances of such an offense are less serious than that of a person charged with enticing homeless women off the streets with promises of food and shelter.  The government contends Mr. Jones deceived some of the women into believing they were having sexual relations with celebrities in the entertainment business that would be able to further their careers.  Certainly a woman who voluntarily engages in sexual relations with a stranger in hopes of being placed in a music video is much less traumatized by discovering the man was not as powerful as she thought than an innocent young woman who is physically forced (raped) by a stranger without any hope of personal benefit.  So whether under the circumstances these women were willing to give oral sex to men if it furthered their careers, but otherwise would not have been willing to do so does not change Mr. Jones' legal culpability for the crime, it certainly does inform the seriousness of his crime for sentencing.

The videos of the movies that these women performed in, and the atmosphere of the clubs that they frequented, are highly relevant to the validity of any representations Mr. Jones might of made about his ability to obtain modeling opportunities for them. The highly explicit sexual nature of the videos that they did participate in shows the level of sexual exposure these woman were clearly comfortable with and thereby minimizes any emotional damage they would have suffered by their involvement with Mr. Jones. In measuring the impact on the victims, the Court must consider the experience, the maturity, and social morays of the victim.

Similarly the atmosphere of the clubs in which these women socialize, and where some of them initially met Mr. Jones is highly relevant to their level of sophistication and social acclamation to explicit sexual behavior. It informs the level of traumitization they would experience as victims. If they were voluntarily seeking out raunchy sexual experiences, the behavior which they complain could not have been nearly as harmful to them as it would have been to a sheltered young woman who is forced into this environment, to whom casual anonymous sex would have been unheard of and forbidden.

### PROSTITUTION

This is not a heartland prostitution case. Typically one thinks of a prostitution case as one where a pimp charges a John a set amount of money for sexual relations with a woman who receives a cut of the money that has been paid to the pimp. That is not at what has been described by the women in this case. The women do

not see money exchange hands, they do not receive any money. The government's assertion that Mr. Jones received money for sexual favors provided by the woman is purely speculative. For instance, the Presentence Report does not contain any restitution based upon acts of prostitution. All the restitution is based upon the extortionate extension of credit or peonage related to the contracts for stripping. The discovery doesn't contain any allegations from men who received sexual favors that they paid for them. None of the women claim that they were paid for sexual favors or that they saw payment to Mr. Jones for sexual favors. At best, the "prostitution", is based upon allegations that Mr. Jones offered up women for sexual favors to avoid paying cover charges in clubs, or to ingratiate himself with club management, or for the women to garner favor with entertainment personalities that could put them in music videos. While such motivation qualifies as prostitution under the criminal statutes, it does not fall within the heartland of commercial prostitution.

## CONFIDENTIALITY

The probation office contends that they do not have to reveal the identity of the five victims who are quoted in paragraph 115, based upon Rule 32(d)(3)(B) because they had promised confidentiality. It appears that the probation office is using this information to support both the claims for restitution to be awarded to the victims, and the seriousness of the defendant's conduct based on the impact it has had on the victims. Mr. Jones

submits that a rule of procedure can not trump his constitutional right to due process in the sentencing procedure. This Rule of Confidentiality that the probation office is invoking totally insulates this extremely damaging testimony from any rebuttal or impeachment. If Mr. Jones does not know the source of the information, it is completely impossible for him to impeach the credibility of the defendant with motive, bias, or inconsistent statements, let alone rebut the veracity of the statements by contradicting the assertion with facts that could only be discovered through an investigation of the individual making the statement. For instance, in ¶ 115 one victim alleges that she has incurred economic losses that have not been verified to the probation officer by providing receipts. Although the probation officer does not contend this "victim" should receive reimbursement for these amounts since the amounts have not been verified, obviously these unfounded allegations are still highly prejudicial in the Court's assessment of the harm the defendant has caused to individual victims. Even if the Court is not considering this evidence because it is unverified in calculating the restitution that is owed, it has the propensity for inflaming the Court's decision on the length of the sentence that should be imposed. In fact these unidentified victims call for life imprisonment to salve their wounds.

The government has also noted that it has no objection to identifying these victims by their initials, which would enable Mr.

Jones to make a meaningful response to their allegations. Letter dated 1/7/08, p.8 par.115, Attached PSR. The purpose of the Victim Witness Protection Act is to assist victims of crime but to do so without infringing on the constitutional rights of the defendant. <u>United States v. Satterfield</u>, 743 F.2d 827, 833 (11th Cir. 1984)(citing 18 U.S.C. § 1512). In <u>Satterfield</u> the Eleventh Circuit upheld the constitutionality of the VWPA noting that "if the rights delineated in Rule 32 are enforced by the sentencing judge, the defendant should be afforded timely notice and an opportunity to respond to the statements made in that report." <u>Id</u>. at 841. While Mr. Jones may have been given timely notice of how the victims claim they have been impacted, there is no meaningful opportunity to respond without the identity of the alleged victim.

While the Eleventh Circuit has held, even post <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), that hearsay is admissible at sentencing, provided it have sufficient indicia of reliability. <u>United States v. Castellanos</u>, 904 F.2d 1490, 1495 (11th Cir. 1990). See <u>United States v. Cantellano</u>, 430 F.3d 1142, 1146 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, 547 U.S. 1034 (2006) (Crawford does not apply to non-capital sentencing procedures.)

SUPERVISED RELEASE

Mr. Jones submits that based on his plea agreement and the plea colloquy before the Court on August 27, 2007, that the maximum term of supervised release that can imposed upon him is three years. The plea agreement drafted by the government at ¶5, advised

Mr. Jones that the maximum term of supervised release was not more than three years. During the plea hearing, there was repeated discussion about what the applicable term of supervised release was and Mr. Jones was clearly advised it was three years at most. Doc. 10-13, 30,39,41,42,53,54. His term of supervised release for life was never mentioned. Although the Eleventh Circuit has held that under certain circumstances the failure of the Court to advise a defendant that the sentencing guidelines require a term of supervised release, might be harmless error, Mr. Jones submits that this is not the case here. In <u>United States v. Mosley</u>, 173 F.3d 1318, 1328 (11th Cir. 1999), the defendant was not advised of his supervised release range under the sentencing guidelines during his plea colloquy. When he received his Presentence Report, neither he nor his attorney objected to this aspect of the sentence, nor did they object at the time the sentence was imposed. Mr. Mosley raised the issue for the first time on appeal, and the Eleventh Circuit found the district judge did not clearly err and that Mosley's failure to object to the PSR or to the sentence when it was imposed "evidenced that no substantial right was affected and permitted affirming the sentence." <u>Id</u>., fn.12. Mr. Jones submits the <u>Mosley</u> case is distinguishable from his situation because he was repeatedly informed by the government and the Court that supervised release was a maximum of three years. Both he and the government filed timely objections to the Presentence Report reflecting the term of supervised release as life. Moreover, Mr. Jones would

14

submit that the difference between three years of supervision and lifetime supervision is qualitatively different than a defendant who might have misapprehended that he faced no supervision versus three years of supervision.

## ACCEPTANCE OF RESPONSIBILITY

Paragraph 254 of the Presentence Report recommends that Mr. Jones not receive acceptance of responsibility. The initial report did recommend a two level decrease for acceptance of responsibility, consistent with the recommendation of the government in the plea agreement. The government subsequently objected to Mr. Jones being awarded acceptance of responsibility because he moved to withdraw his guilty plea and because some of his objections to the Presentence Report directly contradict facts he had previously admitted in his plea agreement and at his plea hearing. Mr. Jones submits that he should be entitled to a two level decrease for acceptance of responsibility. Regarding his Motion to Withdraw His Plea, it was based upon his misunderstanding of two aspects of his plea. First, the negotiated plea was hammered out in the courtroom during recesses of the trial. The government drafted the plea agreement, and included a provision that the parties agreed the guideline range was 120-180 months. It was not until later when Mr. Jones had access to a guidelines manual, that he realized the 120-180 months did not actually reflect a guideline range on the Sentencing Table. In addition, based upon his misreading of <u>Apprendi v. New Jersey</u>, 530 U.S. 466

15

(2000) and <u>Booker v. United States</u>, 543 U.S. 220 (2005), he believed that if the Court agreed with the probation office that his guideline range was 360 months to life that the guideline maximum trumped the statutory maximum of 15 years contained in his plea agreement. After lengthy discussions with standby counsel, Mr. Jones now understands that the guideline range in the plea agreement was intended to reflect the agreement of the parties as to the minimum Mr. Jones could ask for and the maximum the government could ask for in his sentencing. He also now understands that <u>Apprendi</u> and <u>Booker</u> do not hold that the guidelines trump a statutory maximum penalty.

Mr. Jones further submits that his dispute of facts in the Presentence Report is consistent with the discussions he had with the government in reaching a plea agreement, and consistent with the provisions of the plea agreement. Mr. Jones has always maintained that the guideline for aggravated sexual abuse does not apply to his conduct, that is the basis for his sentencing objections as set out in his objections to the Presentence Report, and the provision in the plea agreement that allows him to argue for ten years. Therefore, his objections to the Presentence Report are not inconsistent with his representations to the government at the time they entered into the agreement with him and they agreed to recommend the two level downward adjustment for acceptance of responsibility. Moving to withdraw a guilty plea "may not automatically preclude offense level reduction for acceptance of

16

responsibility". <u>United States v. McCarty</u>, 99 F.3d 383, 387 (11th Cir. 1996). In <u>McCarty</u> the Eleventh Circuit found there was not clear error in the district court denying acceptance of responsibility, as the basis for his motion to withdraw his plea was protestations of his innocence and lack of involvement in the conspiracy and McCarty raised no objection to the denial of acceptance at the sentencing hearing. <u>Id</u>. Mr. Jones' objections support the position he has consistently taken, not that he is not guilty, rather that his conduct is not aggravated sexual abuse. If the Court agrees with Mr. Jones in his objections, clearly he should be entitle to a reduction for acceptance of responsibility.

## CHARACTERISTICS OF THE DEFENDANT

Mr. Jones submits he was primarily involved in business promotion. He advised women on to how better to market their commodity. Their commodities were their bodies and he provided advice on how to market their commodity to make money by stripping. Mr. Jones submits he was successful at business promotion and the women benefitted financially from his assistance.

## CONCLUSION

Mr. Jones also renews the specific objections previously made to the Presentence Report and his arguments that in fashioning a reasonable sentence the Court should consider the disparate treatment he face in contrast to his co-conspirator, Michelle Styles, and the onerous conditions of his lengthy pre-trial confinement.

Respectfully submitted this 18th day of January, 2008.

/s/ STEPHANIE KEARNS
GEORGIA BAR NO. 409950
STAND-BY COUNSEL FOR JIMMY LEE JONES

Federal Defender Program, Inc.
Suite 1700, The Equitable Bldg.
100 Peachtree Street
Atlanta, Georgia 30303
404/688-7530; FAX 404/688-0768
stephanie_kearns@fd.org

CERTIFICATE OF SERVICE

I hereby certify that the foregoing SENTENCING MEMORANDUM ON BEHALF OF JIMMY LEE JONES is formatted in Courier 12 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

> Susan Coppedge, Esquire
> Assistant United States Attorney
> 600 Richard B. Russell Building
> 75 Spring Street, S. W.
> Atlanta, Georgia  30303

Dated:  This 18th day of January, 2008.

> /s/ STEPHANIE KEARNS
> GEORGIA BAR NO. 409950
> STAND-BY COUNSEL FOR JIMMY LEE JONES