IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL INFORMATION** |
| | : | **No. 1:07-CR-285-WSD** |
| **JIMMIE LEE JONES** | : | |
| **a.k.a. Mike Spades** | : | |
| **Defendant.** | : | **Sentencing Date: January 24, 2008** |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Assistant United States Attorney Susan Coppedge and Department of Justice Trial Attorney Karima Maloney, hereby submits this memorandum in aid of sentencing.

### INTRODUCTION

On August 27, 2007, Defendant Jimmie Jones was convicted after pleading guilty to one count of Conspiracy to Engage in Sex Trafficking of six adult and two minor victims, in violation of 18 U.S.C. § 371, and one count of Transportation of two adults for Prostitution, in violation of 18 U.S.C. § 2421. These charges stem from Jones's activity as a pimp from on or about June 2000 until November 2005. During this time, Jones forced and coerced over ten[1] young women and minors to engage in prostitution by using physical violence, threats of violence, deception, blackmail

---

[1] The Government's investigation revealed that in addition to the six young adult and two minor victims named in the information, the Defendant coerced at least five other young women to engage in commercial sex acts. These "unnamed" victims, J.D., M.S., T.K., S.C. and R.M, are referenced in the PSR.

and extortion.  The statutes to which the defendant pled guilty limits his exposure to 15 years or 180 months of imprisonment.  Under the plea agreement that he entered into with the United States, Jones agreed that he will not request a sentence less than 120 months. Thus, pursuant to the plea agreement, the parties have stipulated that the minimum sentence that Jones should receive is 120 months and the maximum sentence is 180 months. (Plea Agreement pg 6, ¶ 6).  On January 16, 2008, the United States Probation Office prepared the Revised Presentence Investigation Report ("PSR") and concluded that the defendant's conduct yields a custody guideline range of 360 months to life, which must be capped at the 180 month statutory maximum.  (PSR at 58).

The United States requests that this Court impose a sentence of 180 months.  The Government believes that the PSR correctly applied the guideline provisions and that the resultant range of 360 to life clearly reflects the gravity of the defendant's conduct, and the need for a substantial sentence in this case.   The statutory maximum sentence is warranted in this case, not only because the ultimate guideline range suggests a much more significant sentence, but also because a sentence of 180 months takes into account the extremely serious nature of the disturbing offense conduct at issue in this case.  The Government believes that any sentence less than 180 months, would not address the extreme harm to numerous young women and minors that Jones caused, and would not conform with the sentencing factors outlined in 18 U.S.C. §3553 (a).

The PSR has outlined the guideline issues that remain "unresolved" (PSR pg 61-62), which include:

1)    Which guideline manual edition to utilize;

2)    The amount of restitution;

3)    Whether the defendant engaged in conduct described in 18 U.S.C. Section 2241/ §2A3.1(b)(1);

4)    Whether the obstruction of justice enhancement applies;

5)      Whether the defendant has accepted responsibility;

6)      Whether the PSR has correctly calculated the defendant's criminal history;

7)      The term of supervised release; and

8)      Whether the court should consider downward departure.

In the following memorandum, the United States addresses those issues, provides its position on recognizing the conduct and harm caused to victims who were not named in the indictment, and responds to Jones's objections to the facts outlined in the PSR.   Finally, the Government demonstrates that the sentencing factors outlined in 18 U.S.C. §3553(a) weigh heavily in favor of a sentence of 180 months.

## ARGUMENT

### I.      "Unresolved" Guideline Issues

#### A.      The PSR Correctly Uses the 2007 Edition of the Guidelines Manual.

The Government agrees that the 2007 edition of the Guidelines Manual should be used to calculate the sentencing guidelines for defendant Jones.   The 2005 edition yields the same offense levels as were calculated pursuant to the 2007 edition.   U.S.S.G. § 1B1.11 (use the Guidelines Manual in effect on the date that the defendant is sentenced, unless such application would violate the ex post facto clause.).

#### B.      The PSR Correctly Calculated the Amount of Restitution.

The PSR correctly calculated that the amount of restitution owed by the defendant is $81,4000.   This amount represents the money that Jones extorted from the victims under his fraudulent modeling contracts.   (PSR pg. 31).   This figure includes monies paid by named victims as well as J.D. and M.S., who are not named in the indictment.   The defendant claims that he should

not be required to pay restitution to J.D. and M.S., however there is ample support for the PSR's conclusion that he should.

First, the defendant consented pursuant to the plea agreement to pay $13,500 in restitution to J.D.  (*See* Plea Agreement ¶ 7 pg. 6).  He also agreed "to pay full restitution to all victims of the offenses which he is pleading guilty and any relevant conduct...." Id.  The agreement advised Jones, "Defendant understands there may be additional victims identified by the Court who were held to extortionate contracts and that the restitution may increase and additional victims be added." Id.  Moreover, during the plea hearing the defendant agreed that he would pay restitution to "other victims held to extortionate contracts by the defendant as determined by the Court." (Plea Hearing Transcript pg. 51, ln 6-12).

Moreover, Eleventh Circuit law provides that when ordering restitution in a case involving conspiracy, a district court "may order restitution for acts of related conduct for which the defendant was not convicted." *United States v. Dickerson*, 370 F.3d 1330, 1339 (11th Cir. 2004) (quoting *United States v. Lawrence*, 189 F.3d 838, 846 (9th Cir. 1999)).  "Restitution may be ordered for victims not named in the indictment so long as their harm flowed directly from the charged conspiracy." *United States v. Wasielak*, 2005 WL 1540133, *4 (11th Cir. July 1, 2005), *citing Dickerson*, 370 F.3d at 1338-39.  In this case, both J.D. and M.S. were held to extortionate contracts by Jones during the time frame of the conspiracy.  The Government has provided the probation office with copies of the contracts and/or receipts of the money that the defendant collected from these women.  The defendant also admitted in this plea hearing that he "made thousands of dollars from the commercial sex acts and extortionate contract payments from victims named in the information and *other victims* not named." (Plea Hearing Transcript pg 51, ln 2- 5).  Accordingly,

-4-

J.D. and M.S. are entitled to restitution, the defendant agreed to pay them restitution, and the amounts that J.D. and M.S. are owed should be included in the restitution order.

### C.    The Defendant Engaged in Conduct Outlined in 18 U.S.C. § 2241/§2A3.1(b)(1).

Defendant Jones clearly engaged in conduct labeled as "aggravated sexual abuse" by 18 U.S.C. § 2241 by using force against the victim or "threatening or placing" a person "in fear that any person will be subjected to death, serious bodily injury, or kidnapping" C.U. reported that Jones threatened to beat her if she did not have sex with two men in a nightclub. When C.U. did not immediately comply with Jones, he began pushing her around and slapping her repeatedly in the face. C.U. stated that this beating made her afraid not to do as Jones told, and she had sex with the men against her will. Jones also used force to make C.U. have sex with him. Jones came to her college campus and hit her in the face, pushed her into his car, slapped her so hard her earring came out, and forced her to perform oral sex on Jones.

D.T. reported that Jones physically abused her which caused her to fear him. D.T. was forced to have oral sex with the defendant when he slapped her for not holding his penis correctly. D.T. was also threatened with physical beatings by the defendant and witnessed him brutally beat victim N.M. These incidents placed D.T. in fear of serious bodily injury and, as a result, she engaged in acts of prostitution as instructed by the defendant. R.C. reported that the defendant physically hit her eight to nine times and on two occasions beat her up. These incidents of force compelled R.C. to engage in sexual acts as directed by the defendant. R.C. also frequently witnessed Jones strike other women, including the brutal beating of N.M. On one occasion when R.C. refused to work for Jones, he telephoned her and read her parents home address to her. R.C. interpreted this as a threat against her parents. As a result of that call, R.C. continued to work for the defendant and

was required to perform oral sex on him.  These incidents of force, and the call placing R.C. in fear of violence toward her parents, compelled R.C. to engage in sexual acts and constitutes aggravated sexual abuse.

Jones admitted at his plea hearing and in the plea agreement that he "caused C.U, R.C., and D.T. to engage in sex acts, including oral sex and vaginal intercourse with himself and others by hitting and striking them and threatening to beat them."  (Plea Agreement, pg. 3).  Using  violence and fear to cause these women to engage in sexual acts with himself and other persons is consistent with conduct described in 18 U.S.C. § 2241 and leads the Court to correctly apply the cross reference in U.S.S.G. § 2A3.1(b)(1).  United States v. Madison, 477 F.3d 1312, 1316-17 (11th Cir. 2007)(use of violence and fear to coerce victim to remain with defendant as his employee was synonymous with coercing her to continue to perform sex acts so he could recover the proceeds); United States v. Banks, 190 Fed. Appx. 825, 826 (11th Cir. 2006)(court found that pimps that caused underage girls to engage in sexual acts by placing them in fear qualified for the cross-reference to U.S.S.G. § 2A3.1, citing United States v. Pipkins, 378 F.3d 1281, 1299-1301 (11th Cir. 2004)).  Jones also admitted in the plea agreement that  "while they worked for the defendant, Jones caused R.C., C.U. and D.T. to engage in sexual acts with himself and other men by hitting and beating the women and threatening the women with severe beatings, including telling them that he would 'fuck them up,' 'beat their asses' or 'beat them unrecognizable.'" (Plea Agreement ¶ 4, pg 4).

### D.     The Defendant Has Obstructed Justice.

Under guideline section  3C1.1, the defendant's offense level is to be increased 2 levels "if (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to the (i) the defendant's offense of conviction and any relevant conduct...." U.S.S.G. § 3C1.1.  Here the PSR correctly concluded that Jones willfully attempted to obstructed justice in the sentencing phase of the case by providing the probation officer with materially false information.  Specifically, in his letter to the probation officer expressing his objections to the PSR,  Jones made several statements which contradict the evidence in this case and his admissions during the plea hearing.  Specifically, he stated to the probation officer that he did not know K.B. and L.V. were minors, he did not lure the victims into prostitution, and that the victims were willing to engage in providing sexual favors.   Each of those statements is in direct contradiction to his plea colloquy.  These facts are clearly material to a  prosecution for the offenses of placing minors into prostitution, and coercing adults to engage in prostitution.   This constitutes obstruction of the sentencing of the instant offense, and according to application note (h) to guideline section 3C1.1, this type of conduct warrants the application of the obstruction of justice adjustment.  *See* U.S.S.G. § 3C1.1, application note 4 (h) (example of obstructive conduct includes, "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." ).  *See e.g., United States v. Edouard*, 2007 WL 3313446, *3-4, (11th Cir. Nov. 9, 2007) (slip copy) (affirming obstruction of justice enhancement because defendant failed to appear at judicial proceeding and failed to provide a legitimate address to his Pretrial Services Officer).

Additionally, the two level adjustment for obstruction of justice is warranted because Jones lied under oath during his detention hearing before Magistrate Judge Baverman.  Pursuant to section 3C1.1, application note 4(f), a defendant earns the obstruction of justice adjustment by, "providing materially false information to a judge or magistrate." U.S.S.G.§ 3C1.1, n. 4(f).  In this case, on July 6-7, 2006, and continuing on July 17, 2006, Magistrate Judge Baverman held a hearing on Jones' motion to reconsider release pending trial.  Jones falsely testified during this hearing that there was no sex involved in the trip that he took with several victims to Daytona Beach, FL for "Spring Bling." (Hearing Tr., Vol. 1, pg. 169-170) (Attachment A).   This statement was clearly false, as this trip is one of the events underlying count two of the Information, which charges Jones with transportation of two victims for the purpose of prostitution.   Jones also falsely testified that: 1) "nothing he did had anything to do with sex" (Hearing Tr., Vol. 1, pg. 172) (Attachment A); 2) he never forced victim C.U. "to do anything," (Hearing Tr., Vol. 2, pg. 291) (Attachment A); and 3) he never hit, R.C., D.T., C.U. or "any of the girls" (Hearing Tr., Vol. 3, pg. 362-363) (Attachment A).  These statements to the magistrate judge were material to the sex trafficking prosecution and were completely false, as the defendant has since admitted during his plea hearing that he did the very things that he denied under oath.  Based on his lies to a magistrate judge and false information provided to the probation officer, Jones has clearly attempted to obstruct justice in this prosecution and sentencing.   The Government requests that the Court strongly consider this behavior in its sentencing decision.

### E.    The Defendant Has Not Displayed Acceptance of Responsibility.

The PSR correctly denies the defendant the two level reduction for acceptance responsibility. For several reasons, it is clear that Jones has not accepted responsibility in this case.   Jones has filed

a motion to withdraw his plea and he has filed objections to the PSR that directly contradict material facts he admitted in the plea agreement and at the plea hearing. Particularly, in his objections Jones has stated that the victims were willful participants in prostitution, that he did not lure them into the prostitution business, that he did not brutally assault N.M., and that he did not know that K.B. and L.V. were minors. Jones has clearly not accepted responsibility for his conduct, as evinced by these factual denials of his conduct and his recent attempt to withdraw his guilty plea. The law in the Eleventh Circuit is clear that "a defendant may not warrant the [acceptance of responsibility] adjustment if he falsely denies relevant conduct for which he is accountable." *United States v. Lewis,* 115 F.3d 1531, 1537 (11th Cir. 1997) *citing* U.S.S.G. §3E1.1, n.1(a). Guideline section 3E1.1 provides for a two level reduction "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction." "The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea." *United States v. Sawyer,* 180 F.3d 1319, 1323 (11th Cir. 1999). Other than entering his guilty plea, Jones has done nothing to meet this burden and to the contrary his recent statements with respect to the PSR display that he denies responsibility for his criminal conduct. Accordingly, he has not earned this reduction. *See United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) ("Our case law permits a district court to deny a defendant a reduction under §3E1.1 based on conduct inconsistent with acceptance of responsibility, even when the conduct includes the assertion of a constitutional right. In addition, frivolous legal challenges could suggest to the court that the defendant has not accepted responsibility for his conduct."). *See also*, *United States v. Addison* 2007 WL 3287518, *2-3 (11th Cir. Nov. 8, 2007) (slip copy) (denying acceptance of

9

responsibility and applying obstruction of justice enhancement where the defendant made false denials of guilt under oath).

**F.      The PSR Correctly calculates the Defendant's Criminal History Level.**

The defendant's battery conviction should be included in his criminal history points. Although he received first offender treatment for the battery conviction, this conviction was not expunged and, therefore, must be included in his criminal history calculation.  *See United States v. Knight*, 154 Fed. Appx. 798, 799-800 (11th Cir. 2005) (holding that defendant's prior drug conviction under Georgia First Offender Act was properly included in the calculation of his criminal history category because the conviction was not expunged).  *See also, United States v. Shazier,* 179 F.3d 1317, 1319 (11th Cir. 1999).

**G.      The Term of Supervised Release Must not Exceed Three Years.**

The Government agrees that the term of supervised release cannot exceed three years.  Under 18 U.S.C. § 3583(k) the authorized term of supervised release for any offense under 18 U.S.C. § 2421, transportation of others in interstate commerce to engage in prostitution, is "any term of years or life."  18 U.S.C. § 3583(k)(2005).[2]  The Government mistakenly informed the defendant and the Court that the term of supervised release was three years, as Count Two in the information was a Class C felony.

---

[2]18 U.S.C. § 3583 was modified in 2006.  For an offense under 18 U.S.C. § 2421, the period of supervised release is now "any term of years not less than 5, or life."  This change occurred after the defendant's criminal conduct was completed, and, thus, the 2005 law is applied.

Under Rule 11, the District Court must address certain core principals before accepting a guilty plea. One of these principles is that the "defendant must know and understand the consequences of his guilty plea." *United States v. Ellis,* 218 Fed. Appx. 908, 909 (11th Cir. 2007) *quoting United States v. Jones*, 143 F.3d 1417, 1418-19 (11th Cir. 1998). Rule 11 also requires the Court inform the defendant of "any maximum possible penalty, including imprisonment, fine and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H). A core concern of Rule 11 is to make certain the defendant is informed of and understands the charges against him and the maximum sentence associated with those charges. Failure to give this information to the defendant can violate "a defendant's substantial rights, and, thus, can constitute plain error." *United States v. Hutchins*, 179 Fed. Appx. 594, 598 (11th Cir. 2006) *citing United States v. Camacho*, 233 F.3d 1308, 1314 (11th Cir. 2000). To avoid any prejudice or error based on the Government's misstatement of the period of supervised release, the Court should sentence Jones to three years of supervised release. A period of supervised release of three years will not affect defendant Jones's substantial rights, as that is the sentence he believed he could receive. As Jones has objected to a longer term of supervised release, the Court is limited to the maximum term of supervised release provided to the defendant at the time of his plea, or three years.

### H.    A Downward Departure is Not Appropriate and, if the Guidelines  Range Did Not Exceed the Statutory Cap, an Upward Departure Would Be Warranted.

The Government objects to any downward departure in this case. The defendant engaged in

the sexual exploitation of numerous minors and young women. This conduct included not only blackmail and threats of financial ruin, but also threats of violence and actual physical and sexual

assaults.  The defendant's conduct spanned a period of approximately five years— from 2000 to 2005.  During this time, Jones made several thousands of dollars by forcing young women into prostitution.  Clearly this type of serious criminal activity, which negatively affected numerous victims and the community, should be met with a serious sentence not a downward departure.  Furthermore, the justifications cited by Jones for a downward departure are not compelling.

The defendant claims that he deserves a downward departure because the PSR over represents his criminal history.  There is no support for this claim.  Section 4A1.3 of the guidelines provides for departures a when the criminal history level significantly over represents the seriousness of the defendant's criminal history.  Furthermore, the policy statement for section 4A1.3 makes clear that this departure only applies in rare circumstances.  The policy statement clarifies that this departure is "concerned with patterns or timing of prior convictions, and not with the individual facts of the individual prior crimes." *See United States v. Smith*, 289 F.3d 696, 713 (11th Cir. 2002).  The guideline states, "a downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  U.S.S.G. § 4A1.3, application note 3.  The defendant's criminal behavior simply does not fit into the framework that would allow for a downward departure.  The government has consented to the removal of the criminal trespass point for his conviction in 2000, thus lowering his criminal history to level II.  The instant conviction is for a conspiracy that began in 2000, notably while Jones was on probation, and continued until 2005.  While engaged in the conspiracy, Jones also received two misdemeanor convictions for battery and driving while his license was revoked.  Jones's

criminal history is adequately captured and does not warrant a departure for over representation, especially in light of the removal of a point for the criminal trespass conviction.

Jones also claims that he should receive a downward departure because Michelle Styles was not prosecuted. This argument also fails.  Michelle Styles assisted the defendant in fraudulently recruiting women for "modeling" and in monitoring the victim's activities in strip clubs and during the prostitution work.  No victims have alleged that Styles used force on them, threatened them with violence, sexually assaulted them, or extorted money from them. This conduct was perpetrated by Jones.  Moreover, the evidence suggests that Ms. Styles was at one time a victim of Mr. Jones and may have been coerced by the defendant to assist him in recruiting and monitoring women.  Lastly, there is no evidence that Ms. Styles made any money off the other victims.  Importantly, 18 U.S.C. § 3553(a)(6) states that the sentencing court should avoid sentencing disparities among defendants who have been "found guilty of similar conduct."  Ms. Styles has not been found guilty of any offenses related to this case, therefore, there is no disparity concern for the court.    The PSR correctly concluded that Ms. Style's conduct, "is not comparable to that of the defendant for a 3553 analysis."  (PSR pg 61).  Finally, there is no legal support for Jones's assertion that his conditions of confinement provide a basis for downward departure.

If the Court were to consider any type of departure in this case, the circumstances of Jones's conduct present grounds for upward departure.   As correctly noted in the PSR, the Court may consider an upward departure under Section 5K2.8 [Extreme Conduct], because Jones' conduct was unusually heinous, cruel, brutal or degrading to the victims.  (PSR pg. 61).  These victims were forced by Jones to engage in humiliating public sex acts with strangers, often times without protection.  The young women were filmed by the defendant engaging in sexual acts, required to

provide oral sex to Jones upon command, and required to expose their body parts in public.  They were beaten and threatened with violence, as well as lawsuits and exposure to their families and college campuses.  These experiences were extremely traumatic and degrading to these victims who ranged in age from only 16 to 22 years.

Additionally, as set out in the PSR, the Court may also consider an upward departure pursuant to Section 5K2.1 [Dismissed and Uncharged Conduct].  Under this section, the court may upwardly depart to reflect the actual seriousness of the offense based on conduct "(1)... underlying a potential charge not pursued in the case as part of the plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range."  Here, the PSR has identified five additional women who reported that they were coerced to perform sex acts by Jones during the time frame of the charged conspiracy.  These women, and the heinous conduct visited on them by the defendant, are consistent with the named victims in their descriptions of the defendant's scheme, deception, blackmail, and physical intimidation.  (PSR pg. 20 - 27).  These potential charges did not enter into the determination of the applicable guideline, but are nonetheless, a part of Jones's conduct and could be used by the Court to upwardly depart.  Despite these compelling reasons for an upward departure, the guideline range already exceeds the statutory maximum sentence.

## I.    Consideration of Victims Not Named in the Information Is Appropriate.

The PSR should incorporate *all acts* committed by the defendant, including his conduct toward the five victims identified by probation who were not named in the information (J.D., M.S., T.K., S.C., and R.M.).  These women reported to law enforcement conduct of Jones occurring during the time of the charged conspiracy.  Their reports of being recruited for modeling by Jones and then forced or coerced prostitution are entirely consistent with the reports of the named victims in this

14

case.   This information is part of "nature and circumstances of the offense and the history and characteristics of the defendant" and is, therefore, properly included in the PSR.   18 U.S.C. § 3553(a)(1).

While the Government is not asking the Court to use this additional conduct and these additional victims to calculate the guideline sentence, the fact that such similar conduct occurred and that there were additional victims who suffered at the hands of the defendant should be known by the Court and recognized in arriving at a reasonable sentence under 18 U.S.C. § 3553(a).   See discussion in section H., supra pg.14, and U.S.S.G. § 5K2.1.   Like the victims named in the information, J.D., M.S., T.K., S.C. and R.M., each reported  participation in sexual acts at the defendant's direction because they were in fear of Jones.   J.D. described incidents that also fit the definition of aggravated sexual abuse.   She indicated that she was forced to have sex with the defendant and other men after being beaten by him, and that on one occasion she was locked into a hotel room with the defendant, not allowed to leave, and forced to have sex with him.   R.M. also described an instance of aggravated sexual abuse.   She indicated that the defendant showed her his gun and then forced her to have sex with three unknown men while he videotaped her.   R.M. complied in that instance because she feared being shot by the defendant.

**J.     The Defendant's Factual Objections to the PSR Should Be Rejected.**

Throughout his objections to the PSR, Jones has made allegations that are false, unsupported by the evidence, and contradicted by facts that he admitted in both his signed plea agreement and under oath during his plea hearing.   Some of these allegations and suggestions in his objections include: 1) he did not use force to compel the victims to work as prostitutes; 2) the victims willingly performed the sexual acts; and  3) he did not know that L.V. and K.B. were minors.   (See

Defendant's Objections, ¶¶ 14, 15, 19, 20, 86).  However, Jones admitted at his plea hearing and in his plea agreement that he "compelled the women to engage in commercial sex acts, by use of violence, threats of violence, threats of financial ruin, threats to ruin their credit, threats to expose sexually explicit videotapes, monetary fines, and other forms of coercion," and that he "recruited two minors, L.V. and K.B. who he knew were under the age of eighteen, to work as prostitutes for him. L.V. and K.B. performed commercial sex acts at his instruction." (Plea Agreement ¶ 4, page 4).  It is well established that in sentencing a defendant, the court may rely on facts the defendant admits during the plea colloquy.  *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005); *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989).  Here, Jones admitted to facts and conduct that support  all of the guideline applications in the PSR—he admitted to causing minors to engage in prostitution, he admitted to using force, fraud and coercion to compel the victim to work as prostitutes and he admitted to committing aggravated sexual abuse by causing, C.U., D.T., and R.C., to perform sex acts by force and threats of violence.   By now objecting to these facts, Jones is contradicting and denying his admitted conduct, and attempting to avoid a sentence that reflects his true behavior.   These objections should be rejected.   Mr. Jones knowingly and voluntarily agreed to the Government's factual proffer at the guilty plea hearing and cannot now distance himself from his admissions.

## II.      Application of the Factors in 18 U.S.C. § 3553(a)(1) and (2)

When weighing the § 3553(a) factors as part of its calculation of an appropriate sentence, the Court should consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the applicable sentencing objectives – that is, that the sentence: (1) reflects the seriousness of the offense; (2) promotes respect for the law; (3) provides

just punishment; (4) affords adequate deterrence; (5) protects the public; and (6) effectively provides the defendant with needed educational or vocational training and medical care.  See 18 U.S.C. § 3553(a)(1) and (2).

      **A.**     **The Nature And Circumstances of The Offense And History of the Defendant Call for a Significant Punishment.**

The defendant admitted and the evidence establishes that between 2000 and 2005 he caused two minors to engage in prostitution, knowing that they had not reached the age of 18, and compelled several young women to engage in commercial sex acts through the use of force, fraud and coercion.   The defendant admitted and the evidence shows that he: (1) lured and recruited the minor and adult victims into prostitution with promises of legitimate modeling or exotic dancing work; (2) the defendant used physical violence, threats of violence, deception, and other forms of coercion to compel the victims to work as prostitutes; (3) the defendant caused C.U., R.C., and D.T. to engage in sex acts, including oral sex and vaginal intercourse with himself and others by hitting and striking them and threatening to beat them; (4) the defendant used physical violence, threats of violence, and various forms of coercion to force the adult victims  to work as prostitutes; (5) the defendant used physical violence, threats of violence and other forms of coercion to compel the victims under contract to pay him hundreds of dollars a week toward their contractual debt and fines levied by the defendant; (6) the defendant transported or caused to be transported D.T. and R.C. across state lines to engage in prostitution.

The defendant approached the eight women named in the information, at colleges, stores, music events, restaurants, or nightclubs, and lured and convinced them to socialize with him by representing himself as a successful modeling and casting agent for either "Candy Girl Casting" or

"Dime Piece Entertainment"—companies Jones claimed to own. The defendant used the presence of M.S., a woman who had found modeling work, to recruit the women as potential models.  Once the victims began socializing with him, the defendant convinced and persuaded the victims to work in strip clubs as dancers, claiming it was necessary for their modeling careers for them to be comfortable with their bodies, and that they could make large sums of money.   The defendant convinced five of the victims, D.T., R.C., N.H., N.M, and S.J., to sign contracts whereby they agreed to pay him between $300 and $450 weekly for 52 weeks. In exchange, defendant promised that he would get the victims modeling jobs in magazines and music videos.  In connection with the contracts, defendant required the women to provide him with their social security numbers.

Jones then became physically and mentally abusive toward the victims—including beating them if they challenged his authority and threatening to harm them.   Ultimately, Jones compelled the women to engage in commercial sex acts, by use of violence, threats of violence, threats of financial ruin, threats to ruin their credit, threats to expose sexually explicit videotapes, monetary fines, and other forms of coercion.  Jones also recruited two minors,  L.V. and K.B., who he knew were under the age of eighteen, to work as prostitutes for him.  L.V. and K.B.  performed commercial sex acts at the defendant's instruction.  While they worked for the defendant, Jones caused R.C., C.U., and D.T. to engage in sexual acts with himself and other men, by hitting and beating the women, and threatening the women with severe beatings, including telling them that he would "fuck them up," "beat their asses" or "beat them unrecognizable."  The defendant profited from commercial sexual acts that he coerced and forced all of the victims to engage in.

Further, the defendant also transported, or caused to be transported, D.T., R.C. and N.M. to locations outside of Georgia, including, Florida, Alabama and Indiana, for purposes of engaging in prostitution.

None of the victims in this case were involved in prostitution before they met the defendant, and many of them are still coping with the physical abuse and psychological torture that they endured while involved with Jimmie Jones.  The victims, all young women, were easily ensnared by Jones' promises of modeling work and, once they became involved with him, Jones sought to control them by requiring them to be in frequent in-person and telephone contact with him.  As the defendant began to assault women in the victims' presences and threaten the victims with assault, the young women became so terrified of  Jones that they believed they had no choice but to obey his orders and pay their contracts.  Jones also utilized psychological abuse to compel the victims' services and payment of their contracts.  Jones would tell the women that God was on his side and that the women deserved his abuse for their past or present sins.  Jones bragged to the women that he rarely bruised them during the beatings, a phenomenon he claimed as proof that God allowed him to abuse them.  Jones also degraded, humiliated, and punished the women by verbally insulting them, and forcing them to perform sexual acts in public places, including oral sex on him or with strangers –  sometimes without the benefit of condom protection.  Jones manipulated each victim by using any combination of the methods of coercion listed above necessary to compel each women to work as a prostitute.

Like all sexual abuse victims, the effects of the defendant's actions on these victims, and particularly the victims who were minors may not be full apparent for years to come.[3]  In addition to the physical brutality, extortion of money, and psychological abuse that Jones subjected these women to, by forcing them into prostitution, he exposed them to high risk of many infectious diseases, especially HIV and other sexually transmitted diseases (STDs).  Furthermore, for the juvenile victims, "[c]hild prostitution often results in serious long-term psychological harm,

_____

[3]  Child sexual abuse (hereafter, "CSA") is a horrible epidemic plaguing this nation's children, evidenced by disturbing studies which reveal that as many as 62 % of women have experienced CSA.  See Joseph H. Beitchman, et al., A Review of the Long-Term Effects of Child Sexual Abuse, 16 Child Abuse & Neglect 101, 115 (1992).  The short and long-term effects of CSA are both devastating and pervasive.  The most common short-term effect can be summarized as the development of some type of inappropriate sexual or sexualized behavior.  See Beitchman et al., A Review of the Short-Term Effects of Child Sexual Abuse, 15 Child Abuse & Neglect 537, 552 (1991).  This behavior is marked by the child's heightened interest in and preoccupation with sexuality, and may be evidenced by sexual play, masturbation, seductive or sexually aggressive behavior, and/or age-inappropriate sexual knowledge.  Id.  The long-term effects of CSA are those behaviors, attitudes or opinions embodied or displayed by the victim many years after the abuse.  See Vander Mey & Neff, supra.  The most common long-term effect of CSA is sexual disturbance or dysfunction.  See Beitchman et al., A Review of the Long-Term Effects of Child Sexual Abuse, supra, at 103.  Anxiety, fear, and depression are also commonly cited long-term effects of CSA, especially where force or threat of force was involved in the abuse.  Id.  Women who are victims of CSA are also more likely to be revictimized.  Id.  Revictimization means that adult and teenage survivors of CSA are more likely to experience abusive relationships and/or be raped due to their CSA-induced low self-esteem, idealization of men, and oversexualization.  Id. at 108.  Other long-term effects include: guilt, mistrust in relationships, and possibly even post-traumatic stress disorder.  See David Spiegel, Suffer the Children, Society, May-June 2000, at 18, 19.  Finally, adult and teenaged CSA victims are more likely to experience the following adult disorders: substance abuse, eating disorders, anxiety disorders, associative disorders, and personality disorders, all of which are highly correlated with suicidality.  See John Read et al., Assessing Suicidality in Adults: Integrating Childhood Trauma as a Major Risk Factor, 32 Professional Psychology: Research and Practice 367 (2001).

including anxiety, depression, and behavioral disorders.  Prostituted children are also at high risk of suicide and post-traumatic stress disorder."[4]

With respect to the history of the defendant, it is important that the Court is aware that the defendant committed the instant offenses while on probation for assaulting his then wife.  Since 2000, the year that this conspiracy began, the defendant reported making only $ 8,729.00, to the IRS, thus it is clear that defendant's proceeds from his illegal prostitution business were his primary source of income.

Both the nature and circumstances of this offense, as well as the defendant's personal history indicate that the maximum punishment is warranted in this case.

### B.    A Significant Sentence reflects the Seriousness of the Offense and will Promote Respect for the Law.

Congress enacted 18 U.S.C. § 1591 in 2001 to address the scourge of the sex trafficking of children and women by force.  The statute provides that a defendant convicted under this offense of trafficking a child over the age of 14 is subject to 40 years imprisonment.  Similarly, the sentences for transportation of adults for prostitution under the Mann Act, 18 U.S.C. § 2421 is  likewise severe.  The sentence imposed here must not only reflect the horrendous nature of the defendant's crimes, but must also have an especially strong deterrent effect on other potential defendants who choose to use juveniles and young adults for prostitution.

The defendant was able to use his position as an adult, with apparent ties to the entertainment and modeling industry to entice  two juveniles and several college-aged girls with promises of fame

---

[4]  Robert W. Deisher, et al., The Pregnant Adolescent Prostitute, 143 Am. J. Dis. Child. 1162, 1162-1165 (1989).

and money.   The defendant was able to coerce, intimidate and strong-arm these young women into a life of prostitution which endangered them physically, mentally and emotionally.  He treated them as nothing more than chattel which existed exclusively for his financial advancement and sexual gratification.  It is imperative that this Court send a strong message that our community will not tolerate such exploitation of women and underage girls by imposing a very severe sentence. Unfortunately, offenders like Jones are now revered in popular culture.  Pimps have been elevated to near icon like status and their behavior is being revered in music, television and movies. Accordingly, those individuals who, like Jones  may be inclined to pursue this particular life of crime as their vocation must be made aware that doing so will subject them to the most severe penalties available.

### C.  A Severe Sentence will Protect the Public from Further Crimes.

The defendant is a dangerous person.  He had the ability to entice and force minors and young adults to sell their own bodies.   These young women felt trapped and threatened by Jones and as a result they had sex with him, prostituted for him, and lost control of their lives to him. Jones used violence and threats to ensure compliance with his rules.  Moreover, he required some of  the women who worked for him to actively recruit similar young women into his world of violence.  A severe sentence will remove the defendant from the street long enough to ensure that he will be unable to return to his chosen lifestyle and, thereby, subject other women and teenagers to the exploitation  suffered by the victims in this case.

22

### D.  A Substantial Sentence Provides Just Punishment.

A very substantial sentence in this case would be consistent with similar cases around the country and, thus, would provide a "just" punishment.

Very few cases involving a pimp and a minor or young adult victims have gone through a jury trial.  Most cases involve a pretrial guilty plea.  Such pretrial resolutions avoid revictimization to the victim from having to testify.   What follows is a sample of some cases known to the government that involve domestic sex trafficking.

Maurice Sims, United States v. Sims (N.D. Ga.), transported a 16 year-old girl from El Dorado, Arkansas to Atlanta, Georgia for purposes of prostitution.  Along the route he beat and raped the girl.  Sims was sentenced to 28 years incarceration.

Wayne Banks, United States v. Banks (N.D. Fla.), pled guilty to interstate sex trafficking of a 17-year-old Toledo girl, intimidating a witness, and conspiracy.   He was sentenced to 40 years imprisonment.

The cases United States v. Parsons, United States v. Thomas, United States v. Washington, United States v. Williams and Southwell, United States v. White, United States v. Sutherland, United States v. Scott, United States v. Phillips  (W.D. Okla.) involved nine defendants arising out of a child prostitution investigation.  Five defendants entered pleas. Defendant Michael Wayne Thomas pled guilty to various charges involving transportation of minors for prostitution.  Sentences ranged from 6 months for minor participants to 240 months for the most culpable.

The charges in United States v. Flores, et al. (W.D. N.C.) stem from the conspiratorial activities of four co-defendants who traveled interstate with the 13-year-old niece of one of the

defendants and had the minor child and the female defendant engage in prostitution for money. Charges include conspiracy to transport a minor for the purpose of illegal sexual activity and conspiracy to transport an adult for the purpose of illegal sexual activity. All pled guilty. Sentences ranged from 26 to 235 months.

Here, the defendant victimized the eight victims named in the information and several other women known to the probation office, by forcing them into prostitution. Jones beat many of these women, threatened them, sexually assaulted them, and stole from them. Jones's cruelty to these women was boundless and has damaged them and left a stain on the community. The sentencing guidelines, which accurately captured the character of Jones' conduct, call for a sentence of 360 month to life. Due to the statutory maximum penalties, Jones may only be sentenced up to 180 months. The Government urges the Court to impose the maximum sentence, as it is the only just and proper sentence.

## CONCLUSION

Wherefore, based upon the foregoing, the Government respectfully requests that the Court impose a sentence of 180 months.

Respectfully submitted,
DAVID E. NAHMIAS
UNITED STATES ATTORNEY


_____

/s/ SUSAN COPPEDGE
Assistant United States Attorney
Georgia Bar NO. 187251

24

KARIMA MALONEY

Department of Justice, Civil Rights Division

Trial Attorney

Texas Bar # 24041383

## CERTIFICATE OF SERVICE

This is to certify that I have served the Defendant on January 22, 2008 with the foregoing motion by causing a copy thereof to be delivered via U.S. Mail to:

> Mr. Jimmie Lee Jones
>
> Inmate # 57747-019
>
> LEGAL MAIL
>
> U.S. Penitentiary
>
> 601 McDonough Blvd., SE
>
> Atlanta, Georgia  30315-0182

I have served stand-by counsel, Stephanie Kearns, by filing the forgoing motion electronically on January 18, 2008.

> /s/ Susan Coppedge
> ASSISTANT UNITED STATES ATTORNEY